**Katherine R. Heekin**, OSB No. 944802
Katherine@heekinlawoffice.com
**M. Diana Fedoroff**, OSB No. 083236
Diana@heekinlawoffice.com
The Heekin Law Firm
808 SW Third Avenue, Suite 540
Portland, OR  97204
Telephone: (503) 222-5578
Facsimile: (503) 200-5135

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KRISTIN SAMUELSON, | Case No. 6:15-cv-01648 |
| Plaintiff, | **COMPLAINT** |
| v. | (Violation of Title IX, 20 U.S.C. § 1681(a) et seq; 42 U.S.C. § 1983, Due Process; 42 U.S.C. § 1983, Equal Protection) |
| OREGON STATE UNIVERSITY, and MIKE RILEY, as an individual, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff alleges:

### PARTIES, JURISDICTION, AND VENUE

1.

This is an action involving claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § § 1681-88 ("Title IX"), the United States Constitution, and state law, arising out of forcible rape occurring within an educational program or activity.

2.

Plaintiff is a resident of Washington County, Oregon, and a former student at Oregon State University ("OSU").

//

PAGE 1 - COMPLAINT

3.

OSU is a government educational institution with its primary campus in Corvallis, Oregon.

4.

OSU receives federal funding and is subject to Title IX.

5.

Upon information and belief, Defendant Mike Riley is a resident of Lancaster County, Nebraska, and a former OSU employee and former Head Coach of the OSU football program.

6.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and LR 3-2(b).

## FACTUAL ALLEGATIONS

8.

On October 9, 1999, Plaintiff, a freshman student at OSU, attended a party at an off-campus apartment. A young man approached her and offered her an open can of beer and told her his name was either Travis or Thomas, was two years old than she, not a student, and was visiting from Portland. She took two drinks of the beer and then became woozy and fuzzy-headed. She next remembers being outside in the front yard of the apartment complex by the carport. The young man was right next to her. She threw up, and he asked her, "Girl, do you need to lay down?" He then escorted her down the street to another building, 1415 NW 20th Street, Apartment No. 3, where some OSU football players lived. Upon information and belief, the beer contained GHB, a date rape drug. When she first regained consciousness, she was in a bedroom with OSU football jerseys and team pictures on the walls. The name Carlyle was on the back of one of the football jerseys on the wall. She was being sexually assaulted by the young man who had offered her the beer. She was unable to move her arms or legs to fight back.

PAGE 2 - COMPLAINT

She faded back out of consciousness.  She regained consciousness two other times while being assaulted, both times unable to make the assault stop.

9.

The next morning, she awoke disoriented, naked and alone, in the same bed, in the same room where the assault occurred, clothes strewn about the room.  She dressed and left the apartment as fast as she could.

10.

On or about October 11 or 12, 1999, Plaintiff reported being raped to OSU's sexual assault counselor at OSU's Student Health Services.  OSU's sexual assault counselor said to Plaintiff: (a) maybe Plaintiff had said "yes", (b) a rape kit was worse than the assault itself, (c) "these things are hard to prove", (d) it would be blamed on Plaintiff, (e) Plaintiff should not have been drinking, gave her meeting times for Alcoholics Anonymous, and then had no further contact with Plaintiff, and upon information and belief, took no further action.  No one else from OSU contacted Plaintiff thereafter about the assault or, upon information and belief, took any other action either.

11.

OSU's sexual assault counselor's words, inaction, and blame, caused Plaintiff to feel even more shame, humiliation, and emotional distress than she had felt after being assaulted, was dissuaded from seeking any further help from OSU, and consequently did nothing more to hold her perpetrator accountable for his crime.

12.

During this time, OSU failed to take corrective action to end the hostile educational environment Plaintiff experienced because of the rape and ensure Plaintiff's full and equal access to educational benefits and opportunities.

13.

Upon matriculating to OSU, Plaintiff had already earned 15 college credits while in high school, had a high SAT score, and a cumulative grade point average of approximately 3.5 when

PAGE 3 - COMPLAINT

she graduated from high school. After the rape and OSU's hostile response, Plaintiff attempted to continue her studies, but was too distraught, isolated, anxious, and depressed to attend class and focus on her studies. She failed out at the end of her first year at OSU.

14.

On November 14, 2014, Plaintiff saw the Brenda Tracy story in *The Oregonian*. Plaintiff learned for the first time that Ms. Tracy was sexually assaulted on June 24, 1998 by four men, two of whom played football for OSU, Calvin Carlyle and Jason Dandridge, at 1415 NW 20th Street, Apartment No. 3 in Corvallis, Oregon, the same apartment where Plaintiff was raped a year later. Ms. Tracy felt as if she had been drugged and remembered not being able to move her arms or legs, same as Plaintiff. Plaintiff also discovered for the first time in the winter of 2014 that Ms. Tracy had reported being raped to OSU's sexual assault counselor, Joanne Dodgson, in July of 1998 — more than a year before Plaintiff was raped in the same apartment.

15.

She also discovered in the winter of 2014 and early 2015, after Ms. Tracy made her report, Ms. Dodgson and other OSU officials failed to take corrective action, including (a) end the hostile and sexually violent culture toward women permitted by OSU's football program, (b) create and implement more effective sexual assault prevention policies, (d) prepare and present training programs for students, coaches and faculty about consent and appropriate sexual conduct, (e) investigate sexual assault allegations impartially and comprehensively, (f) engage law enforcement, (g) craft discipline commensurate with the severity and frequency of the acts of sexual harassment and violence by OSU's football players and their associates, and (h) have ongoing emotional, psychological, and educational on-campus support and off-campus resources for sexual assault victims.

16.

Plaintiff also discovered in the winter of 2014 that her attacker was Calvin Carlyle's cousin.

///

PAGE 4 - COMPLAINT

17.

Larry Roper, vice provost for student affairs in 1998 and 1999, said, "Sex assaults were murky" and "We had no idea back then how to conduct an investigation," as quoted on December 29, 2014 in *The Oregonian.* He also said, "It wouldn't happen today. We'd expel them both," referring to Calvin Carlyle and Jason Dandridge, OSU's football players. Lois Krzesewski, former Oregon Department of Education employee, who served as an adviser in 1998 and 1999 to OSU's President Paul Risser on the Commission for the Status of Women on Campus, was quoted as saying in the same article, "There was a lack of reporting when it came to sex assaults on campus. We had a real problem, and everyone knew it." OSU's female students, including Plaintiff, did not know it. Instead, OSU's personnel made Plaintiff feel as if it was her problem.

18.

Former Benton County District Attorney Pete Sandrock, in the same news article, published on December 29, 2014, said he knew, before 1998, OSU assistant football coaches attempted to talk sexual assault survivors out of pursuing cases. Deputy District Attorney Pam Hediger, responsible for prosecuting the men who raped Brenda Tracy, said in the same article, "What those men did to her was depraved."

19.

In 1998, according to the news article published on December 29, 2014, OSU had a budget shortfall and enrollment was down twelve percent from the start of the decade. Publicity associated with the sexual assault against Ms. Tracy by OSU's football players was a threat to enrollment and university gift giving. Ms. Krzesewski said in the December 29, 2014 article, "We used to watch helicopters bringing in donors land and take off. We'd joke, 'There's another bag of money landing.' This entire awful episode [the rape of Ms. Tracy] threatened that. We were advised not to be hostile toward [OSU's Athletic Director Mitch] Barnhardt and we were told specifically not to discuss the particulars of Brenda Tracy's case." Ms. Samuelson was still

/ / /

in high school in 1998 and was not aware of the publicity associated with the sexual assault against Ms. Tracy.

20.

OSU's football coach responded to Ms. Tracy's allegations by suspending Carlyle and Dandrige for a single game in the fall of 1998, and OSU's administrators placed them on school probation, told them to perform 25 hours of community service and to attend an educational program.

21.

No one from OSU contacted Ms. Tracy after she reported her sexual assault involving two OSU football players. Sixteen months later, Plaintiff was raped in the same apartment as Ms. Tracy. Yet again, OSU did nothing.

22.

Ms. Samuelson did not discover until the winter of 2014 and early 2015 that OSU had actual knowledge of the risk of rape by student athletes and thus that it was foreseeable that female students would be raped in the future, and that OSU had failed to reevaluate its sexual assault prevention policies and procedures, training, investigation methods, football culture and system for supporting students who had been raped, and had failed to create and implement more protective and supportive and rehabilitative methods, policies, and practices.

## FIRST CLAIM FOR RELIEF
### Violation of Title IX, 20 U.S.C. § 1681(a) (Against Oregon State University)
### Deliberate Indifference to Prior Sexual Violence

23.

Plaintiff incorporates each and every allegation of paragraphs 1-22 as if fully set forth herein.

24.

OSU knew from the police report that Ms. Tracy gave to OSU's Ms. Dodgson that Carlyle associated with sexually violent males and participated in the sexual harassment and sexual assault against Ms. Tracy on June 24, 1998 while he was enrolled at OSU, a year before

Plaintiff was a student at OSU. OSU's administrators and football coaches also knew that football coaches had been deliberately indifferent to or actively suppressed other reports of sexual harassment and assault by OSU's football players toward females or at apartments of OSU's football players.

25.

OSU had actual knowledge of the hostile culture toward women permitted by OSU's football program and history of sexual assaults and harassment towards women by OSU's football players. OSU also had actual knowledge of the substantial risk that Carlyle would associate with other sexually violent males who would sexually harass OSU's female students at his apartment based upon prior conduct by Carlyle and his associates.

26.

OSU officials, administrators, and football coaches, with the knowledge described above, had the authority and opportunity to address the risk posed by Carlyle and other sexually violent males with whom Carlyle associated, and the authority and opportunity to reform the football program's hostile culture toward women, and had the authority to institute corrective measures, such as:

(a) terminating Carlyle's athletic scholarship and expelling him from OSU;

(b) investigating reports of rape and sexual assault and then taking swift action to prevent their recurrence;

(c) adequately training OSU's sexual assault counselors;

(d) creating, implementing, and maintaining adequate sexual assault prevention policies and procedures;

(e) providing ongoing emotional, physical, and psychological support to OSU's female students after being raped;

(f) providing academic assistance, adjustments, accommodations, and support to OSU's female students after being raped and while suffering from anxiety, depression, and post-traumatic stress disorder;

PAGE 7 - COMPLAINT

(g) providing counseling, health, mental health, victim advocacy, legal assistance, and other services both on-campus and in the Corvallis community to assist sexual assault survivors.

27.

OSU's failure to address the risks posed by OSU's football program's hostile culture towards women and indifference or active suppression of sexual assault and harassment complaints involving OSU's football program and related incidences at OSU's football players' apartments and Carlyle's continued enrollment was clearly unreasonable in light of the known circumstances.

28.

OSU's conduct was deliberately indifferent to the substantial risk that Carlyle would associate with other sexually violent males who would sexually harass OSU's female students or that there would be a recurrence of sexually violent conduct at apartments of OSU's football players.

29.

As a result of OSU's deliberate indifference, Plaintiff was subjected to extreme sexual harassment in the form of rape by Carlyle's cousin in the same apartment where Carlyle and three other men had sexually assaulted Ms. Tracy, more than a year before.

30.

Furthermore, beginning on or about October 11 or 12, 1999, OSU had actual knowledge of sexual harassment of Plaintiff in the form of a rape inflicted upon her at 1415 NW 20th Street, Apartment No. 3, Corvallis, Oregon.

31.

OSU was deliberately indifferent to reports of rape and sexual misconduct by (a) failing to investigate reports of rape and sexual misconduct by Ms. Tracy and Plaintiff properly, (b) failing to notify law enforcement of Plaintiff's rape, (c) discouraging Plaintiff from reporting the sexual assault to law enforcement, (d) minimizing or covering up the discriminatory import of

Ms. Tracy's and Plaintiff's reports of sexual assault to OSU, and (e) continuing to use ineffective methods to address sexual assaults of OSU's female students as more specifically described in paragraph 25, herein fully incorporated by reference.

32.

OSU's deliberate indifference was intended to protect its fundraising efforts, which were heavily dependent on donors' positive regard for OSU's football program and the image of a safe campus, and consequently OSU subjected Plaintiff to a hostile educational environment so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities and benefits.

33.

Plaintiff has suffered damages and injuries as a result of OSU's violations of Title IX in an amount to be proven at trial up to $2,500,000.

## SECOND CLAIM FOR RELIEF
### Deprivation of Due Process – Liberty – Under 42 U.S.C. § 1983
### Against Defendant Mike Riley

34.

Plaintiff incorporates each and every allegation of paragraphs 1-22 as if fully set forth herein.

35.

Plaintiff has a constitutionally protected liberty interest in her own bodily security.

36.

Defendant Riley acted under color of state law and in his official capacity and individual capacities in taking the actions alleged herein.

37.

Defendant Riley had actual knowledge of Carlyle's association with sexually violent males and participation in sexually harassing and gang raping Ms. Tracy on June 24, 1998 at 1415 NW 20th Street, Apartment No. 3, over a year before Plaintiff was raped in the same place. Defendant Riley also had actual knowledge of the football program's hostile culture toward

women and custom or practice of ignoring or suppressing reports about sexual misconduct by OSU's football players toward females.

38.

With deliberate indifference to these known and obvious dangers, Defendant Riley retained Carlyle as a member of OSU's football team on a full athletic scholarship and all related privileges with little regard for the future protection of female students in OSU's community. Riley made no efforts or minimal efforts to reform the football team's hostile and sexually violent culture towards women by, such as, advocating for more protective sexual assault prevention policies, disciplining assistant coaches who ignored or suppressed reports of sexual misconduct by players, training players about consent and appropriate sexual conduct with women, and disciplining players in a manner that was commensurate with the severity and frequency of instances of sexual harassment by OSU's football players.

39.

Defendant Riley's deliberate indifference to these known and obvious dangers exposed Plaintiff to danger she would not otherwise have faced.

40.

As a direct and proximate result of Riley's deliberate indifference, Plaintiff was deprived of her constitutional right to bodily security and suffered damages and injuries for which Riley is liable under 42 U.S.C. § 1983 in an amount to be proven at trial up to $2,500,000.

### THIRD CLAIM FOR RELIEF
**Violation of Equal Protection – Under 42 U.S.C. § 1983**
**Against Defendant Mike Riley**

41.

Plaintiff incorporates each and every allegation of paragraphs 1-22 as if fully set forth herein.

42.

Defendant Riley's actions alleged herein were taken under color of state law and in his official and individual capacities.

43.

By the actions and omissions alleged herein, including but not limited to retaining Carlyle as a member of OSU's football team on full athletic scholarship, permitting a sexually violent culture among the football team's players, relatives, and friends towards women and female students, allowing assistant coaches to attempt to silence sexual assault victims, failing to respond to reports of sexual assault, and failing to discipline football players in a manner commensurate with the severity and frequency of instances of sexual harassment by them, Defendant Riley exposed Plaintiff to severe sexual harassment, including rape, and a hostile educational environment on the basis of sex.

44.

Defendant had no exceedingly persuasive justification for his sex-based discrimination.

45.

Defendant's actions and omissions deprived Plaintiff of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

46.

Plaintiff has suffered significant damages as a result of these violations, for which Defendant Riley is liable under 42 U.S.C. § 1983 in an amount to be proven at trial up to $2,500,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendants as follows:

(a)     An award of damages against all Defendants in an amount to be established at trial, including, without limitation, reimbursement for all of Plaintiff's tuition or related expenses; payment of Plaintiff's medical expenses incurred in the past, present, and future as a consequence of the sexual assault; damages for deprivation of equal access to the educational benefits and opportunities provided by OSU; damages for deprivation of the benefits and opportunities resulting from obtaining a college degree; damages for past, present, and future

emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life in an amount to be proven at trial up to $2,500,000; and punitive damages.

      (b)      An award of prejudgment and post-judgment interest;

      (c)      An award of costs and attorney fees, pursuant to U.S.C. § 1988(b); and

      (d)      Such other relief as is just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: August 31, 2015

                              THE HEEKIN LAW FIRM

                              By: s / Katherine R. Heekin
                                  Katherine R. Heekin, OSB # 944802
                                  M. Diana Fedoroff, OSB # 083236
                                  Attorneys for Plaintiff